**IN THE COURT OF APPEALS OF IOWA**

No. 16-1969
Filed April 5, 2017

**IN THE INTEREST OF C.L.,**
**Minor Child,**

**T.C., Father,**
       Appellant.

_____

Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Thomas E. Bjornstad of Bjornstad Law Office, Spirit Lake, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Shannon L. Sandy of Sandy Law Firm, P.C., Spirit Lake, for minor child.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

C.L. was born in January 2015. The Iowa Department of Human Services (DHS) believed J.L and S.L. were the child's biological father and mother. The parents had an on-again-off-again relationship until March 2015, when the couple married. A child-in-need-of-assistance (CINA) case for C.L.'s older siblings was in progress at the time of the marriage, but the parents appeared to be making progress toward resolving their several issues. However, after the parents relapsed into methamphetamine use, DHS filed an application for temporary removal of C.L. and C.L.'s older half-siblings on September 15. On October 20, C.L. was adjudicated a CINA. DHS made reasonable efforts to reunite the family but those efforts were unsuccessful. During the course of the CINA cases for the three children it was discovered J.L. was not the biological father of C.L. and B.L., an older half-sibling. S.L.'s parental rights to all three children were terminated. The rights of the biological fathers of C.L.'s half-siblings were also terminated.

C.L.'s actual biological father, T.C., first became aware he might be the father a few months after C.L.'s birth. T.C. stated he did not want to get involved and risk disrupting S.L. and J.L.'s marriage, so he made no effort to establish paternity or a relationship with the child. T.C. did not step forward at the time of C.L.'s removal from the home, though he had the opportunity to do so. In December 2015, T.C. traveled with S.L. to visit her parents, and was introduced as C.L.'s father. Finally, on June 24, 2016, paternity was established between T.C. and C.L. T.C. expressed interest in establishing a relationship with C.L. However, he refused to comply with drug testing required by DHS, and visitation

was never established. The juvenile court found T.C. had abandoned and deserted C.L. under Iowa Code section 232.2(1) and (14) (2016). T.C.'s parental rights were terminated pursuant to Iowa Code section 232.116(1)(b) and (h) on November 2, 2016. T.C., now appeals.

The scope of review is de novo in termination cases. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We give weight to the juvenile court's findings of fact, but are not bound by them. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The highest concern in termination proceedings is the best interests of the children. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

T.C. does not claim termination was inappropriate under section 232.116(1)(b) and (h). When a ground for termination is not disputed, we need not consider if termination on that ground is appropriate. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). T.C. claims the State and DHS should have more diligently searched for him. T.C. claims upon learning J.L. was not the biological father in December 2015, the State and DHS should have been required to locate him, and suggested publishing notice to accomplish this.

Iowa Code sections 232.88 and 232.37 establish the notice rules in CINA proceedings. While we agree with T.C. that the primary purpose of the notice rules are to notify interested parties of their opportunity to participate in the proceedings and receive services, we also find there is no duty for the State or

DHS to shoulder the burden of determining the biological parent of every child in need of assistance. The notice rules provide, "notice of the pendency of the case shall be served upon the known parents, guardians or legal custodians of a child." Iowa Code § 232.37. T.C. cites no authority requiring DHS or the State to notify unknown parents.

T.C. also claims his paternity was established June 28, 2016, and the petition for termination of parental rights was filed July 20, depriving him of "any meaningful services which may have resulted in re-unification." T.C. does not challenge the juvenile court's determination he both abandoned and deserted C.L. and so we need not address this issue. However, we remind T.C. he was aware of the possibility of his paternity a few months after C.L.'s birth. T.C. was informed by the mother he was the biological father in December 2015. Because of T.C.'s choice, paternity was not established until June 2016. T.C. repeatedly chose to avoid responsibility and a relationship with C.L. until it was convenient for him, and even then, refused to take the basic step of submitting to a drug test in order to begin any type of relationship. Pursuant to Iowa Court Rule 21.26(1)(a), (c), and (e), we affirm the juvenile court.

**AFFIRMED.**